Thank you, Your Honor. May it please the Court. Kaylee Lartigue brought this ADA suit to hold Northside School District accountable for its failures to accommodate her hearing impairment while she was a student. Kaylee also satisfied the only conceivable prerequisite to bringing that suit by exhausting the administrative procedures identified in Section 1415L of Section 1415L. The Supreme Court, however, dismissed her ADA claim for one reason. It believed that under the Supreme Court's decision in Frye, plaintiffs cannot bring a standalone ADA claim if the government of the claim concerns the denial of a free and appropriate public education, also known as a FAPE. That reasoning is wrong. It should be reversed for two reasons. First is contrary to the text of Section 1415L. That statute makes clear that aside from its exhaustion requirement, which Kaylee satisfied in this case, nothing in the IDEA shall constrict a limit or restrict a plaintiff's ability to bring an ADA claim. And second, the District Court's decision also is contrary to the Supreme Court's decision in Perez and Frye. Why don't we just remand this case to let the District Court and the Council address this under Perez? Because this all happened before the Perez decision came out, which is seminal in explaining how Frye works and how the other claims can work under federal law. Why shouldn't we just let the District Court have the first opportunity to apply this Perez case? So we think the District Court just misunderstood Frye. And in fact, we filed a Rule 60p motion while this appeal was pending, asking the Court to reconsider its decision in light of Perez. And the Court issued an opinion a couple of weeks ago saying that it was a denier motion saying Perez was not applicable here. So it stuck to its understanding that Frye precludes this. So you think the District Court already had a chance to apply Perez? That's right. And I mean, you know, we would be happy with a remand, obviously. You know, we certainly don't think you should affirm. But we do think that it would be helpful if the Court, you know, explained exactly what the Frye error was. You pled ADA claims with nominal damages and other damages and attorney's fees. That's correct. Is that correct? Yes. Yes. And so, you know, we think we're fully entitled to go to trial, which, like I said, the District Court believed that this case should go to trial on the ADA claim based on the facts. And it just simply misunderstood how Frye works. Why don't you have a collateral estoppel issue here? I mean, these facts have already been tried on the IDEA claim. Sure. So we have two independent arguments for against collateral estoppel. The first one is that issue preclusion does not apply in this context because the hearing officer's decision was issued in the course of a statutorily required administrative exhaustion regime. And as we explained in our brief in the Astoria and University of Tennessee cases, the Supreme Court made clear that whenever an administrative decision is issued in the course of an administrative proceeding that's required by statute before you can bring suit, you're not, you know, collaterally estopped in the suit itself based on the hearing officer's findings. So even though the facts may have been decided one way in that proceeding, they could be decided in a completely different way in different findings in a later proceeding. Is that your position? That's right. I mean, that's how administrative exhaustion normally works. You normally have to go before an administrative tribunal or some sort of ALJ or, you know, a hearing officer, present your case, and if you're not satisfied, the statute, you know, because you had to go through the statute required you to do that, you know, you undergo that process, but then you go to court. And that's exactly what we think Congress was contemplating here. But, you know, aside from that, what really happened is the hearing officer did not decide the ADA issue. It really just evaluated the facts in light of the IDEA state requirement and determined whether overall the school provided an educational program that was reasonably calculated to advance for education. Here in our ADA claim, you know, the legal issues are different. We're arguing that the school's failure to accommodate resulted in her exclusion from particular public programs. And I think, you know, the Congress debate competition. So the hearing officer considered the fact that the school district did not, you know, provide timely translation services for the debate competition. They excused that because it concluded that Kaylee was able to go to other debate competitions and do other extracurricular activities. So overall, she received. But the hearing officer did decide that the district adequately provided closed captioning for audiovisual content, that the district did ensure the availability of multiple interpreters, that the district provided private counseling, and that the district secured the cards for debate activity. All of those facts have been decided adversely to you. Well, they were decided, like I said, in the course of administrative proceedings, so they're not preclusive whenever we go to court because we were required to proceed based on the section 1415L. So, you know, it really wouldn't make sense for us to have to go through that in order to go to court, but then be barred by the findings in that proceeding when we get to court. But, you know, to the extent that the CART services, like I was explaining, for the debate competition, the hearing officer didn't decide that, you know, they provided a reasonable accommodation for the debate competition under the ADA. They really just received the faith under the IDEA. And, you know, those are two completely different legal issues. And, you know, we think the reasoning on that is particularly, you know, helpful for us on the issue provision point because, you know, the ADA doesn't allow public entities to, you know, sort of do this no harm, no foul, where, you know, you exclude them from one program, and that's justified because you allow them to participate in a different program. So, you know, we just don't think that the hearing officer's reasoning on that point in particular would preclude us from pursuing our IDEA claim in this case. You know, I'm happy to talk about the statutory text because, you know, I do think this court has made clear time and again that we should start there. And, you know, I do think the statutory text is positive. So, you know, to the extent that the District Reporting Center stood it, you know, we think clarification would be useful. The first part of the statute specifically says that nothing in the IDEA should restrict or limit the plaintiff's ability to bring an ADA claim. That's the general rule under the IDEA. It also provides a caveat to that, which is you have to undergo the exhaustion requirement if the gravamen of the claim also implicates a fate. But here, everybody agrees that Kaylee satisfied that exhaustion requirement, so the Section 1415L exhaustion provision has now fallen away, and the only thing that's left is the general rule that nothing in the IDEA should preclude her suit. And that's exactly what Frye said. You know, Frye, there's a line in Frye that specifically says the opposite of what the District Court said. I mean, the Supreme Court said the IDEA does not prevent the plaintiff from asserting claims under other such laws, such as ADA, even if those claims allege the denial of a fate, much as an IDEA claim would. I mean, that's exactly what we have here. The District Court seemed to sort of misunderstand the gravamen analysis, which is relevant to the exhaustion requirement, and not really focus on the statutory text, which we think is just positive. And, you know, in Pera, the most recent case, as Judge Elrod was explaining that, that case did sort of change the landscape and the exhaustion regime. We think it's helpful for us because it, you know, the plaintiff in that case did bring a standalone ADA claim, and the Supreme Court said that Section 1415L does not bar such a suit. So, you know, we don't think that the District Court read Frye correctly, but, you know, Perez sort of takes care of any doubt about that. You know, the final thing I'll say on this is we don't really think that the other side really defends the District Court's reasoning under Frye. They try to come up with an argument that to bring an ADA claim after exhaustion, you also have to include an IDEA claim in your suit. And we just don't think that that's right. The statute doesn't say that, and there's no case that says that either. So, you know, we really think that, you know, if the Court just takes a statutory text and tells the District Court to, you know, go back to where it was, which is this case should go to trial, you know, that's really all we're asking here. I'm happy to answer any further questions, or I'm happy to sit down. All right. Thank you. You've saved time for about a minute. Thank you, Your Honor. Thank you. Ms. Walker? Thank you. May it please the Court, I'm Meredith Walker on behalf of Northside ISD. Judge Elrod, I'm going to go straight to your question, which is why should this Court not remand, or why should it remand this case? Why don't you pull that microphone just a little bit? Is that better? Yes, that's fine. There we go. Is why should the Court not remand it for them to, or for the District Court to address Perez? And it's because Perez is a very, very does not apply to this case. I do not believe that. The District does not believe that. And the reason why is when you look at 20 U.S.C. 1415, which is the provision of the IDEA that deals with special education due process hearings, it specifically finds that a special education hearing officer's decision is final. So that goes to your question, Judge Smith, with respect to the collateral estoppel issue. And then, unlike other administrative statutes that require exhaustion, under 20 U.S.C. 1415I, it specifically states that a party that is aggrieved by a special education hearing officer's decision files a complaint in a federal District Court. Now, in the briefing, in the reply brief that Ms. Lardigrew's counsel filed, they took issue with the fact that I referred to that as an appeal. But that's exactly what it is, and that goes to the heart of the issue before the Court. They absolutely exhausted with the special education hearing officer. Nobody is taking issue with that. But what they didn't do was fully exhaust. There is a mechanism in which you take the matter where you were aggrieved and you file that with the federal District Court. In fact, when you look at this Court's prior precedent in R.S. v. Highland Park . . . The difficulty I have with that is that when you look at Justice Gorsuch's opinion, it's a typical, carefully crafted opinion of the text itself. It's a unanimous opinion from the Court. And what it builds from is a framework of the history of the IDEA and ADA and how they work from 1975, 1990, those two statutes. And what the Court finally comes down to, as I read Peretz, is the exhaustion requirement. Just ask a simple question. Can this plaintiff get relief under that? And the answer is no. So he is free to file a 1983 suit or whatever else they want to do it. Now, what I hear you saying is that, well, yes, but there's no requirement of exhaustion. But if he exhausts the remedies that are there, he forecloses the relief and they're not foreclosed. In other words, this is a suit for money damages now. Right. You are correct. However, there's already a finding that the school district provided the student with a free, appropriate public education. And there is a process . . . The merits of the claim. And there is a process to appeal that decision. They did not appeal that decision. And when you hear that, the focus of the surrogate's opinion is upon the relief that is granted. Right. And you agree with that. And the relief they seek is money damages. And so they are free to pursue that. In the course of that, however, whatever the damages are, will be taken up in terms of what services have been provided and whatever. But it won't foreclose that. In other words, you get credit for what you did to get it correctly because that will go into the damage structure. Otherwise, this approach turns Perez upside down. And after all those years of litigation, I don't think that's the way the court intended. So the school district's argument does not turn Perez upside down because in Perez, they settled the underlying due process hearing. So there was no finding against the school district there that the school district had or had not provided the student with a FAPE. So there was nothing to take up on appeal under 20 U.S.C. 1415, which is why in Perez, they were able to seek money damages. Here, we have a finding that the school district provided the student with a FAPE. The mechanism to address whether that is accurate and the mechanism to address whether the district court got that right is to appeal it. But it doesn't matter whether they provided them with the FAPE or not because the remedies are completely different. They didn't even have to exhaust. They shouldn't be penalized for doing what they did do if they didn't even have to exhaust their claims. But the basis of their claims, which is why the district court went through the Frye analysis, is a denial of a free, appropriate public education. That is part of the claims, but they also have the claims that they're entitled to monetary damages under the ADA for not being accommodated. There are two different types of claims with different remedies and different exhaustion requirements. But all of the accommodations they seek are all of the accommodations that were provided in her individualized education program. But this isn't any more about accommodations. This is about damages under the ADA, isn't it? No, because, again, we do not believe that Perez applies. Because when you look at, again, going back to Frye, the gravamen of this complaint is the denial of free, appropriate public education. Under that, you have to have something more than a denial of FAPE in order to recover. What are they asking us for? Are they asking us for a FAPE or are they asking us for damages in attorney's fees for ADA? They're asking for damages, but those damages are based on a denial of FAPE, which requires something more than just that denial of FAPE. They're based upon the person being in the deaf community and not being able to be accommodated, just like they would be if they were in a workplace or somewhere else. It doesn't matter whether they're in the education system or not for the thing that they're suing for. The damages are not the education. It's for the denial of the ADA. It's a completely different federal remedy, a completely different federal statute. This case says that you don't even have to exhaust whenever you're seeking a completely different remedy. It's all based upon what remedy you're seeking. And I think our argument is more nuanced than that because setting the remedy piece aside, the gravamen of their complaint and the basis of the failure to accommodate all comes down to not providing the student with what the student was entitled to, allegedly, in her individualized education program. So, I agree completely that under the ADA or that intentional discrimination standard that was the court set forth in the DA versus Houston ISD case, then that absolutely, under Perez, gets them damages. The problem here is that we have a preclusive finding that we provided, that the school district provided her with the FAPE. We have a conclusive finding that Judge Smith already read them. We have findings, in fact, showing that we provided her the accommodation she was seeking. They did not take that up, and so they cannot show, as a matter of law, that intentional discrimination piece under DA versus Houston, which requires something more than a denial of a free, appropriate public education. They're not trying to get a free, appropriate education. So, whether or not the is not relevant to this part, you can't be stopped because part of your case was about something else and you didn't appeal that. This is not that determination. Under the ADA, they're not bound by what the hearing agent, even if they had to go through the process, they still wouldn't be bound by what the, what case says they would be bound in a context where they're not seeking the FAPE. They're not seeking the relief under the education statute at all. I don't have a case because this is an issue of first impression. Once Perez came out and this issue came up, this 100% is an issue of first impression. But if you do not have to go through the proceedings and fully exhaust up to the district court level by appealing the hearing officer's decision, then that renders that portion of the IDEA completely meaningless because you can go and get an adverse ruling against you, which is the point I think you were making, Judge Smith. You have this adverse ruling that based on the accommodations you assert the school district did not provide you and they said, no, you absolutely got what you were entitled to. Well, it's not so much the preclusive effect of the adverse ruling as it is the rulings on issues of wrong material fact. That is, did they provide X, Y, and Z and the hearing examiner said, yes, they did. So it's those facts, regardless of what theory those facts were tried under. Exactly. And you can't just throw those facts out. So going back to Aris versus Highland Park, this court specifically said that 20 U.S.C. 1415I creates a federal cause of action to appeal the result of a state or local IDEA due process hearing. Once you get up to the district court level, the district court gets to review the transcripts, gets to review the evidence, gets to review everything that happened, and it's essentially a de novo review at the district court level before it makes it up to this court for another review. But they're not appealing the IDEA due process. What do you say to this sentence in Perez? The statute's administrative exhaustion requirement applies only to suits that seek relief available under the IDEA. And that condition simply is not met in situations like ours where a plaintiff brings a suit under another federal law for compensatory damages, a form of relief everyone agrees IDEA does not provide. And I go back to Perez. They settled the underlying due process hearing, so there was no underlying findings of fact with respect to accommodations. So then they went to district court to file suit looking for money damages. Here, we have underlying facts that are adverse to them that they have abandoned. This is no different than in a district court granting a motion for summary judgment on 1983 and Title IX and somebody only appealing the Title IX claim up here. At that point, they've abandoned the 1983 claim. Here, they have abandoned any ability to have the facts that have been decided against them overturned, and those facts show that they or that Ms. Lardigrew received the accommodations she was entitled to. What you want to do is to say in a suit for money damages that they can't go forward without the suit for money damages because this forecloses it. The difficulty with that is simply that there is nothing—that is really what you're doing in the teeth, to me, of Perez, because you're requiring exhaustion. You're saying that you're finding that those procedures bind a suit for relief that is not provided under the act itself, and that's the sole question. This is unanimous court that's speaking after a series of struggles with this problem, and now to come back and say, well, yeah, but if the school has made these findings, that's collateral assault. It turns the whole scheme upside down. To me, that's Sturgis' opinion. Very simply, very directly, what relief are you being—is available under the act? And the answer is money damages or not, and so they could go—now, what they get with money damages is something else, and you haven't lost your arguments about that, but your argument I'll put to you is a response to a suit for money damages. You haven't been injured, but what you're doing is moving it back and saying, no, you can't sue for money damages, even though Sturgis says you can. So, I mean, you're not being stepped over by that. You either have provided them or you haven't, and so a suit for money damages, you say, well, whatever your suit for damages is, this is what we did, but you don't want to litigate that again. Well, under the theory being presented by Ms. Lardigue's counsel, anybody can go file a due process hearing. They can lose that due process hearing. They can decide not to take advantage of the statutory ability to appeal those adverse decisions, and then they can go to the district court and say, just kidding, we want to try again, even though we already have these facts decided against us. I don't think Perez addresses that. I think that this is a very nuanced issue of first impression that has come about because of the Perez decision, and it just so happened that it was already teed up for this court when Perez came out. Did you ever deny this approach twice, this argument that you're making? Judge, I'm... I mean, judge, the court, district court, who's this? I'm sorry, who's... No, so... I'm sorry, this is not a julium. No, that's okay. We filed a motion for summary judgment on behalf of the school district. It got denied, and then we filed a motion for reconsideration in response to the motion for reconsideration. Judge had a... the district court had a couple of conferences with counsel, had some briefing redone, and then granted the motion for reconsideration and the motion for summary judgment, and then counsel was correct. They filed another motion asking for the court to look at Perez, and the court said no. No, but on this stop. So, the court said, with respect to collateral estoppel, that because it didn't have the IDEA decision in front of it, it could not determine collateral estoppel. We've argued that we do believe collateral estoppel is appropriate because, again, there's a mechanism in the IDEA to appeal adverse decisions. They chose not to take it. They have abandoned any argument asked to that. So, that's where I go back to the district court look to see what the gravamen of their complaint was under FRI, which is what FRI stands for. The district court found that the gravamen of the complaint was a denial of free appropriate public education because the accommodation she is taking issue with are the same accommodations that were in her individualized education program, and from there, the court said you don't have that separate claim. It's a complaint. Again, I do not believe that Perez applies to this because Perez, again, dealt with a situation where they had settled the underlying due process hearing. Here, we had a due process hearing. We had findings of fact. We had a decision from a hearing officer, and nobody appealed that, and the court has to give meaning to 20 U.S.C. 1415I. We can't just throw it out. So, regardless of what the district court did with claim preclusion, it's well established that we can affirm on any ground that appears in the record. So, if we wish to do so, we could apply claim preclusion regardless of whether the district court rejected that. Absolutely, and we briefed claim preclusion for the court for that very reason. Lawrence v. Lewis bill specifically addressed in a special education matter the court and affirming a district court's judgment on other grounds for that very reason, and so we do believe that claim preclusion applies here, which is exactly why we believe the district court correctly analyzed Fry and correctly said this is not a Perez issue. Again, issue of first impression, very nuanced. I recognize that, but we cannot just ignore 20 U.S.C. 1415I, which provides for an appeal. In a panel, you sat on Judge Elrod in K.S. v. Riesel ISD. In your decision, you specifically noted that the appeal of the hearing officer's decision to the district court, so you recognized twice that that is an appellate process. Right, but that was a case that was a traditional thing that they were seeking that. They were not a one-off claim seeking a completely different federal statute that that would not be the tribunal deciding the facts. Right, but even in cases where individuals appeal a hearing officer's decision under 20 U.S.C. 1415, they often add on additional claims, and district courts have routinely, and this court has routinely said those claims are barred because the hearing officer's decision was correct and the student received a FAPE. That puts us all the way back to looking at Fry. What is the gravamen of their complaint? If the gravamen of their complaint is the denial of free appropriate public education, and Northside ISD firmly believes that it is what they are arguing, then they had the opportunity to appeal that. They abandoned it. Perez does not apply, and for the reasons I've argued, and for the reasons in our brief, the school district would ask that you affirm the district court's dismissal. Thank you. Thank you, Ms. Walker. Mr. Stafford? If you could just respond while it's fresh on everyone's mind to Ms. Walker's statement that the gravamen of your complaint is the denial of a FAPE. Sure, yes. We were fully prepared to admit that the gravamen of our ADA claim is the denial of Fry, and the reason we're able to do so is because the gravamen test only concerns whether exhaustion was required. That's the only reason the court announced that test. That's the only utility of that test, but it doesn't matter here because she exhausted. So whether the gravamen of her claim under Fry is the denial of a FAPE or not, it's really irrelevant to the question of whether she can bring her ADA claim because the exhaustion requirement was satisfied. Can you directly address the requirement to appeal? Sure, yes. It's in 1415I, as we explained at pages 8 and 9 of our reply brief. Section 1415L says you must exhaust the procedures in subsections F and G, not I, and Congress clearly knew how to identify specific subsections when it wanted to, and it did not identify filing a claim under subsection I as a prerequisite to bringing an ADA claim. So we just think the text forecloses that. The rest of section 1415L says nothing else in the IDEA, which would include subsection I, should be interpreted to restrict her ability to bring an ADA claim. So we really think the text on their failure to, what she calls, fully exhaust, we think the text specifically refutes that. We fully agree that Perez supports the process. The other side tries to distinguish Perez by noting that the plaintiff in that case settled, whereas here Kayleigh lost before the hearing officer. We don't think that really matters for purposes of reversing the district court's decision because the district court believed that she just can't bring a standalone ADA claim and Perez specifically refutes that. So that's really the only, that's really the key from Perez. But what do you say to the affirm on any ground and collateral stop? Yeah, so, so, you know, we, you know, a particular variety of collateral stop. Right. And so, you know, we're, we, we agree that you can affirm on any ground. We, I will point out though, that the district court did reject the issue preclusion argument twice, both in denying the motion for summary judgment and again, in, in its order, that's fine. But that doesn't bind us. Absolutely not. And, and, you know, I would just say, again, there's no issue preclusion here. The relevant precedents, which really the other side doesn't grapple with, involve unreviewed administrative decisions. And the Astoria line of cases makes perfectly clear that because Kayleigh was required to exhaust, because, you know, at the time, you know, she, the gravamen of her claim was the denial of the faith under Frye. As a result of that, she had to go through the administrative procedures. And because of that, they're not preclusive when she's able to file suit. And what's the best case for that opposition? So we cite several, the best one is the Supreme Court decision in Astoria. There's another one, University of Tennessee versus Elliott. Both of those arose in similar civil rights statutes. I think Astoria was the ADEA and the Elliott was Title VII. And in both of those statutory contexts, you have to exhaust administrative proceedings before you go to court. And in both cases, the Supreme Court said that the factual findings and the administrative proceedings are not preclusive in the subsequent court action. So we think that's exactly the same sort of, you know, it maps out perfectly to this case. And, you know, again, even if you don't buy that, the second point, which I think is critical, is that even if you accept all the hearing officer's findings, they don't, they're not totally dispositive with respect to Kayleigh's ADA claim. The hearing officer did not find that Kayleigh was able to get the translation services for the Congress debate competition. It specifically found that they didn't provide them until January 2019. So she was unable to participate in that competition. So, you know, either way, we just don't think issue preclusion warrants total affirmance and total dismissal for ADA claim here. So she could win on the debate and nothing else? Absolutely. Under that theory? Yes. Even if it's precluded? Okay. Yeah. I mean, you know, again, we don't think anything should be precluded. I mean, as it would, in any case, be able to review the hearing officer's findings or, you know, dispute them. But, you know, even if you don't agree with that, we don't think that dismissal of the entire ADA claim is appropriate here. Unless the court has no further questions, we'd ask you to reverse. Thank you, Mr. Stafford. Your case is under submission.